**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **VE OPENING LLC,**<br><br>                              Plaintiff,<br><br>      v.<br><br>**BLOOMFIRE, INC.,**<br><br>                              Defendant. | C.A. No. 7:25-cv-450<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff VE Opening LLC files this Original Complaint for Patent Infringement against Bloomfire, Inc., and would respectfully show the Court as follows:

### I.  THE PARTIES

1.     Plaintiff VE Opening LLC ("VE" or "Plaintiff") is a Texas limited liability company with its address at 17350 State Highway 249, Ste 220, Houston, TX 77064.

2.     On information and belief, Defendant Bloomfire, Inc. ("Bloomfire" or "Defendant") is a corporation organized and existing under the laws of Delaware with a place of business at 1717 W 6th Street, Ste 215, Austin, Texas 78703. Defendant has a registered agent CT Corporation System at 1999 Bryan St., Ste 900, Dallas, Texas 75201.

### II.  JURISDICTION AND VENUE

3.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.     On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its

business in this forum, including at least a portion of the infringements alleged herein at its place of business at 1717 W 6th Street, Ste 215, Austin, Texas 78703.

     5.     Without limitation, on information and belief, within Texas and this District, Defendant has used the patented invention thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas and this District, including at its place of business at 1717 W 6th Street, Ste 215, Austin, Texas 78703.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Texas and this District.  Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

     6.     Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case including at its place of business at 1717 W 6th Street, Ste 215, Austin, Texas 78703.

     7.     For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.  COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,916,079)

     8.     Plaintiff incorporates the above paragraphs herein by reference.

9.      On March 13, 2018, United States Patent No. 9,916,079 ("the '079 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '079 Patent is titled "Method and System for Enabling the Sharing of Information Between Applications on a Computing Device." A true and correct copy of the '079 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     VE is the assignee of all right, title, and interest in the '079 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '079 Patent.  Accordingly, VE possesses the exclusive right and standing to prosecute the present action for infringement of the '079 Patent by Defendant.

11.     The invention in the '079 Patent relates to the field of methods for enabling the sharing of information between applications on a computing device.  (Ex. A at col. 1:15-17).

12.     The '079 Patent describes the technological problem that existed in the prior art. People relied on applications installed on computing devices, which are typically intended to address a particular function or a limited number of functions.  (*Id.* at 1:21-25).  For example, a calendar application may be used to schedule events and invite participants, whereas an email application can enable participants to message each other about the event.  (*Id.* at 1:25-28).  While each application on its own may be useful for a particular purpose, performance of a task may require the use of multiple applications.  (*Id.* at 1:29-31).  The multiple applications typically operate independently from each other; however, cooperation between the applications, such as through information sharing, would provide a better solution.  (*Id.* at 1:32-35).

13.     With the number of applications on computing devices continuing to grow, users may want or need to use several applications together to perform tasks rather than requiring separate use of each application.  (*Id.* at 1:36-39).  However, setting up the sharing of information

between multiple applications may be difficult and confusion for a typical user and may be tedious even for an advanced user, particularly when the number of applications required to complete a task is large. (*Id.* at 1:39-43). Therefore, there is a need for methods that enable sharing of information between multiple applications to allow users to perform related tasks in a more efficient and user-friendly manner. (*Id.* at 1:43-46). Recognizing the need, the inventor created a new technological method for sharing information between applications on a computing device related to searching across multiple applications and linking information between such applications. (*Id.* at 1:50-64). The claimed invention enables typical or basic users to take advantage of information sharing across multiple applications even though the users may not otherwise attempt such a challenge. (*Id.* at 6:35-40). The invention also results in time savings and efficiency in setting up information-sharing that may be realized even by sophisticated users of the computing device. (*Id.* at 5:40-42).

14. **Direct Infringement.** Upon information and belief, Defendant directly infringes claim 1 of the '079 patent in Texas, in this District and elsewhere in the United States, by performing actions comprising using or performing the claimed method of enabling the sharing of information between a first application and a second application on a computing device by using and offering for sale AI Enterprise Search ("Accused Instrumentality").

15. Bloomfire, through its use of Bloomfire's AI Enterprise Search product, practices a method of enabling the sharing of information between a first application and a second application on a computing device. AI Enterprise Search enables the sharing of information between Bloomfire's internal databases (*e.g.,* posts and files in Sharepoint or Google Drive), applications such as Slack, Google Drive, Microsoft Teams, and Salesforce. Bloomfire's AI Enterprise Search searches both posts and files (an example of data in Bloomfire's databases, the

first application) and content from within integration sources (the second application). Bloomfire's customers describe the ability of Bloomfire to search across different types of content. This is provided as background information, as both documents and video could be stored in a first application or second application. Bloomfire's knowledge management integrations fall into at least two categories: knowledge connectors, including Bloomfire databases (first application) and App Integration (second applications). Bloomfire's official videos disclose the ability to "integrate knowledge into a unified search experience." The disclosure further shows content integrations which include examples of first and second applications. Bloomfire Enterprise Search has the goal of "minimizing context switching across applications. . ."

## Beyond Finding Information

Some cognitive/enterprise search platforms work together with generative AI tools to create insight-filled content. While cognitive AI quickly processes large volumes of data, generative AI creates summaries, reports or presentations based on that information. Glean, for example, assists with content creation, authoring and publishing blog posts, producing articles, correspondence, meeting briefs and more.

Several knowledge management platform providers offer enterprise search as a component. Bloomfire is one such example. The AI-powered platform centralizes enterprise information and makes it searchable via its deep-indexing architecture. The promise is that a worker can ask it a question, and it will both come back with an answer and explain how it arrived at it. "Bloomfire aims to get the right information to the right people at the point of inflection," Dan Stradtman, CMO, Bloomfire told Reworked.

What's somewhat unique about Bloomfire is that its AI encourages knowledge-sharing by making it easy to contribute expertise and encourage engagement. "When employees see their insights valued, they're more likely to keep sharing," said Stradtman.

goal: sharing information between a first and second application by centralizing enterprise information and presenting it via search

(*E.g.,* https://www.reworked.co/knowledge-findability/whats-next-for-enterprise-search-ai-knows/).





(*E.g.*, https://bloomfire.com/platform/ai-enterprise-search/).



(*E.g.*, https://bloomfire.com/platform/ai-enterprise-search/).



(*E.g.*, https://bloomfire.com/integrations/).





(*E.g.*, https://bloomfire.com/integrations/).

## Access Management

Ensuring employees have access to the right information and can easily find content most relevant to their specific role is essential to the success of your knowledge program. Keep company data secure with enterprise-grade tools for precise and secure access controls via SAML, OIDC Single Sign On, and SCIM.



**Azure AD**

Maintain secure access with SSO and build directly into our SCIM API to unify user management at scale using Azure Active Directory.



**Okta**

Maintain secure access with SSO and build directly into our SCIM API to unify user management at scale.



**Google Workspace**

Maintain secure access with SSO and build directly into our SCIM API to unify user management at scale.

## Build Your Own Integrations

Streamline knowledge flow across your portals, intranets, apps, and proprietary systems by building custom API integrations with Bloomfire's enterprise knowledge infrastructure. Create your own knowledge connectors to sync information into Bloomfire, or build custom app integrations for the tools your teams use every day. Our team is happy to provide consultation on your custom integration needs.



**Sync Content into Bloomfire**

Centralize company knowledge and expertise by migrating content from any source into Bloomfire via API.

Learn More →



**Power Chatbots**

Automate employee and customer experiences with chatbots that deliver answers, insights, and documents from your Bloomfire knowledge base.

Learn More →



**Search from Anywhere**

Empower employees and customers to self-serve with a Bloomfire-powered API search function in your intranet, portals, or customer support site.

Learn More →

(*E.g.*, https://bloomfire.com/integrations/).

9





(*E.g.,* https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s).

## AI-Powered Enterprise Search

Work smarter by instantly identifying the most relevant answers and results with Bloomfire's enterprise search solution. Recover lost time spent searching company databases and ineffective filing systems. Our advanced technologies, including deep indexing, semantic search, and generative AI, make it easy for employees to access the best and most relevant content across multiple file types and all your connected enterprise search sources.



**See Bloomfire's AI in action**

second application(s)

# Optimize Workflow with AI-Driven Enterprise Search

Our enterprise search software ensures that your teams have immediate access to critical data by equipping them with the information they need to do their best work. References are always provided, so you can confidently utilize AI answers, with options to deep dive into sources to learn more. Integrating Bloomfire with all your content platforms ensures your teams work efficiently with a unified platform that minimizes context switching across applications and maximizes productivity.

goal: sharing information between a first and second application by centralizing enterprise information and presenting it via search

(*E.g.*, https://bloomfire.com/platform/ai-enterprise-search/).

## Key Features of AI-Powered Workplace Search

AI-powered workplace search solutions offer a range of features designed to enhance the search experience and improve user productivity. Learning these key attributes allows for a seamless selection of a solution that genuinely transforms how your organization accesses and utilizes its vast information repositories. Below are the features you should look for:

○ **Semantic search:** This feature lets you find relevant information even if you use different terminology or phrasing than what's in the document.

○ **Personalized search results:** AI algorithms analyze individual user behavior and preferences to tailor search results. This ensures you receive the most relevant information based on your role, department, and past interactions with the search engine, cutting down on time wasted sifting through irrelevant data.

○ **Faceted search and filtering:** These tools empower you to refine search results by applying various filters such as date range, file type, author, department, or even custom metadata tags, quickly narrowing down vast amounts of information.

○ **Content connectors:** Robust AI search solutions integrate seamlessly with a wide array of enterprise data sources, including databases, cloud storage platforms, content management systems, etc., ensuring comprehensive coverage.

○ **Real-time search analytics:** Gain valuable insights into search trends, popular queries, and user behavior. Organizations can leverage this data to optimize their information architecture, improve content accessibility, and enhance overall search effectiveness.

○ **Security and access control:** Strict security features ensure that users only see information they are authorized to access, maintaining data confidentiality and compliance.

○ **Integration with collaboration tools:** Often, these solutions can integrate with popular collaboration platforms, allowing users to find and share information without leaving their primary workspace.

Benefit: users may access information "without leaving their primary workspace."

(*E.g.,* https://bloomfire.com/blog/how-ai-enterprise-search-work/).

16.    Bloomfire, through its use of Bloomfire's AI Enterprise Search product, performs the step of, from the first application, initiating a global search covering the first application and the second application.  AI Enterprise Search is able to search data within cloud storage (first application) or third party feeds (second application).  This information is presented in Enterprise Search results.



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:15).

## Do you also have integrations for authoring or linking content to the platform?

Yes! Bloomfire has several options for integrations related to authoring. First we have links directly to common cloud platforms that can be used to upload documents, videos, audio files, diagrams or images as part of a post. We have an importation tool that is used during the seeding phase to upload content in bulk using our AI. Finally, we also have enterprise search capabilities that allow you to connect cloud storage like sharepoint or third party feeds and publish that content directly into Bloomfire.

first application    second application

# More Reasons to Integrate

Bloomfire is a **knowledge sharing and collaboration platform** designed to help businesses and team organize, share, and access information more efficiently. It's worth noting that the features and **benefits of Bloomfire** might evolve over time as the platform undergoes updates and improvements.

(*E.g.*, https://bloomfire.com/integrations/).

13

## Build Your Own Integrations

Streamline knowledge flow across your portals, intranets, apps, and proprietary systems by building custom API integrations with Bloomfire's enterprise knowledge infrastructure. Create your own knowledge connectors to sync information into Bloomfire, or build custom app integrations for the tools your teams use every day. Our team is happy to provide consultation on your custom integration needs.



**Sync Content into Bloomfire**

Centralize company knowledge and expertise by migrating content from any source into Bloomfire via API.

Learn More →



**Power Chatbots**

Automate employee and customer experiences with chatbots that deliver answers, insights, and documents from your Bloomfire knowledge base.

Learn More →



**Search from Anywhere**

Empower employees and customers to self-serve with a Bloomfire-powered API search function in your intranet, portals, or customer support site.

Learn More →

(https://bloomfire.com/integrations/).

## Content & DMS (Document Management System)

Organize and access content effortlessly with Bloomfire's document management software. Easily oversee your complete digital library of knowledge in a single, easy-to-use platform and transform your DMS into a knowledge-sharing tool that drives innovation.

With deep-indexing and auto-sync capabilities, our document management platform provides a seamless, AI-powered search engine that integrates across all document management libraries. This setup enhances team collaboration and scales access to vital company knowledge.

Connections are easy to configure and even easier to maintain, so Admins can streamline content and document management with automated processes for curating, migrating, and updating content in bulk. AI will deep-index and auto-sync files, ensuring each team has access to curated, up-to-date information in real time.



(*E.g.*, https://bloomfire.com/platform/document-management-system/).

17.     Bloomfire, through its use of Bloomfire's AI Enterprise Search product, performs the steps of receiving a global search request through the first application, wherein the global search request requests information across the first application and the second application; in response to the reception of the global search request, prompting for a search term from a user. For example, a user may initiate a global search request by clicking on the "Ask AI" search button

in Bloomfire.  The AI Enterprise Search requests information across the first application, (*e.g.,* data held in Bloomfire), as well as the second application, (*e.g.,* third-party apps such as Slack). After the user initiates a global search request by clicking on the "Ask AI" search button, the system prompts the user for a search term by opening a window as is shown below. Alternatively, a user may also initiate a search by typing directly into the search bar.



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:15).



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:18).



(*E.g.,* https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:26).

18.    Bloomfire, through its use of Bloomfire's AI Enterprise Search product, performs the steps of receiving the search term; based on the received search term, automatically determining one or more corresponding candidate elements associated with the second application and presenting the determined one or more corresponding candidate elements associated with the second application for selection by the user.  For example, after the user enters a search term, Bloomfire AI Enterprise Search will automatically determine the relevant candidate elements associated with a second application (*e.g.,* Microsoft Teams) Bloomfire AI Enterprise Search presents the corresponding candidate elements from the second applications back to the user for selection.  A user may select a candidate element by clicking on that element. If a user directly types a search term in the search bar, candidate elements associated with both the first application (*e.g.,* Sharepoint) and second application (*e.g.,* MS Teams) are also shown.



(*E.g.,* https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:21).



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:27).

19.     Bloomfire, through its use of Bloomfire's AI Enterprise Search product, performs the steps of receiving the selection of at least one of the candidate elements; and linking information between the first application and the second application.   For example, for each candidate element, information is shown indicating that information is being linked.



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:21).



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:31).

20.    Bloomfire, through its use of Bloomfire's AI Enterprise Search product, performs the step of, responsive to receiving the selection of the candidate element, linking the selected candidate element with the first application such that a user may access the selected candidate

element from the first application.  For each candidate element, information is shown indicating that information is linked to the first application. For example, after entering a search term, information from within multiple candidate elements are linked to the first application so the user can access the selected candidate element from the first application.



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:21).



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:27).

20

21.     Bloomfire, through its use of Bloomfire's AI Enterprise Search product, performs the step of generating for the first application a selectable link that, when selected, is operable to enable access to information related to the second application.  For example, selectable links are generated.  A user may select a link to enable access to information related to a second application. Note that below, the example candidate element (Sharepoint) is related to a first application.  Other candidate elements are shown as well, including those related to a second application (MS Teams).



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:31).

22.     Bloomfire, through its use of Bloomfire's AI Enterprise Search product, performs the steps of receiving the selection of the linked selected candidate element through the first application; and responsive to the reception of the selection of the linked selected candidate element, presenting information related to the linked selected candidate element through the first application.  For example, when candidate search results are returned, a user can select the

candidate elements through Bloomfire's AI Enterprise Search. After a user selects a candidate element, information from the candidate element can be accessed from Enterprise Search. This is performed without leaving Enterprise Search. For example, as shown below, a user selects a candidate element from a first application (*e.g.,* Sharepoint). Upon information and belief, a user could select a candidate element from a second application (*e.g.,* Microsoft Teams) as well. The information related to the selected candidate element is then displayed to the user within Bloomfire's AI Enterprise Search.



(*E.g.,* https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:21).



(*E.g.*, https://www.youtube.com/watch?v=-CZMq7zsVr8&t=4s at 0:32).

23.    Defendant's customers also infringe claim 1 of the '079 Patent by using or performing the claimed method using the Accused Instrumentality as described above. Furthermore, Defendant advertises, markets, and offers for sale the Accused Instrumentality to its customers for use in a system in a manner that, as described above, infringes claim 1 of the '079 Patent. Exemplary advertising and marketing material is cited above.

24.    **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '079 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant became aware of the infringement at least as of the date of the service of the original Complaint. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its customers for use in a manner that Defendant knew infringed at least one claim of the '079 Patent. For example, Defendant provides marketing material and videos advertising that the Accused Instrumentality performs the claimed method of enabling the sharing

of information between a first application and a second application on a computing device as claimed in claim 1 of the '079 Patent. (*Supra* ¶¶15-22 (identifying marketing materials and videos)).

25.    On information and belief, since becoming aware of the '079 Patent and of the infringement through advertising and offering for sale the Accused Instrumentality for use by its customers, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through specification sheets, support, and user's guides. Exemplary materials are cited above. (*Supra* ¶¶15-22 (identifying marketing materials and videos)). Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '079 Patent by its customers.

26.    On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '079 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations

are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶15-22 (identifying marketing materials and videos)). As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '079 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes at least one claim of the '079 Patent, Defendant knew that each such new use was made and adapted for infringement of at least one claim of the '079 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶15-22 (identifying marketing materials and videos)). Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use. (*Id.*).

27. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '079 patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

28. Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '079 Patent, Plaintiff will be greatly and irreparably harmed.

29.    The asserted claim of the '079 Patent is a method claim to which the marking requirements are not applicable.  Plaintiff has therefore complied with the marking statute 35 U.S.C. §287.

## IV.  JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

    a.    Judgment that one or more claims of United States Patent No. 9,916,079 have been infringed, directly and indirectly, and either literally and/or under the doctrine of equivalents, by Defendant;

    b.    Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein;

    c.    That Defendants be preliminarily and permanently enjoined from any further activity or conduct that infringes;

    d.    That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

    e.    That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

October 6, 2025                          DIRECTION IP LAW

                                         */s/ David R. Bennett*
                                         David R. Bennett (Illinois Bar No. 6244214)
                                         Direction IP Law
                                         P.O. Box 14184
                                         Chicago, IL 60614-0184
                                         (312) 291-1667
                                         dbennett@directionip.com

                                         *Attorneys for Plaintiff*
                                         *VE Opening LLC*